518 A.2d 292

COMMONWEALTH of Pennsylvania, Appellee,

v.

Marlin E. SESLER, Jr., Appellant.

Superior Court of Pennsylvania.

Argued March 25, 1986.

Filed Nov. 19, 1986.

Alexander H. Lindsay, Jr., Butler, for appellant.

Robert F. Hawk, Assistant District Attorney, Butler, for Com., appellee.

Before ROWLEY, WIEAND and DEL SOLE, JJ.

WIEAND, Judge:

Marlin E. Sesler, Jr. was tried by jury and was found guilty of operating a vehicle while under the influence of alcohol[1] and operating a vehicle with a blood alcohol content in excess of .10 percent.[2] He was also found guilty by the court of speeding, a summary offense. On direct appeal, Sesler argues that the results of the intoxilyzer test should not have been received into evidence because the equipment had not been calibrated as required by statute. We reject this argument and affirm the judgment of sentence. However, the fine for speeding will be modified to comply with the statutory mandate.

Sesler was arrested and an intoxilyzer test was administered on May 26, 1984. It measured the alcohol in Sesler's blood at .18 percent. At an evidentiary hearing to determine the admissibility of the test results, the evidence showed that the police had used a Model 4011–AS. This was an approved device. It had been tested and found accurate on May 9, 1984. The equipment had been calibrated permanently at the factory. The qualifications of the officer using the equipment to administer the test were not challenged. Sesler argued that the results of the test were inadmissible because the Model 4011–AS had not been calibrated pursuant to regulations of the Departments of Health and Transportation as required by statute. The trial court rejected Sesler's argument, and the test results were received in evidence. On appeal, Sesler renews his argu-

1. 75 Pa.C.S. § 3731(a)(1).
2. 75 Pa.C.S. § 3731(a)(4).

ment that the test results were inadmissible because the intoxilyzer had not been calibrated. It is undisputed that at the time when the test was conducted, regulations with respect to calibration had not been adopted by the Departments of Health and Transportation.

"The technique of testing breath samples for blood alcohol content has general acceptance in the scientific community, and thus meets the test for admissibility of scientific evidence...." See: *United States v. Smith*, 776 F.2d 892, 898 (10th Cir.1985). The failure to "calibrate" the instrument, if relevant to attack the weight of test results, does not render those results inadmissible. See: *United States v. Smith, supra; United States v. Benally*, 756 F.2d 773 (10th Cir.1985).

In Pennsylvania, the legislature has established by statute that the amount of alcohol in a person's blood, as shown by chemical testing of the person's breath, is admissible in evidence if the tests "were conducted by qualified persons using approved equipment." 75 Pa.C.S. § 1547(c). See also: *Commonwealth v. McGinnis*, 511 Pa. 520, 515 A.2d 847 (1986). The intoxilyzer used to measure the alcoholic content of appellant's blood was an approved device, and the qualifications of the person using the equipment were not challenged.

Appellant contends that the results of tests "conducted by qualified persons using approved equipment" are nevertheless inadmissible unless the equipment "shall have been calibrated and tested for accuracy within a period of time and in a manner specified by regulations of the Departments of Health and Transportation." 75 Pa.C.S. § 1547(c)(1). On the date of appellant's arrest, the Departments of Health and Transportation had by regulations established the time and manner for testing devices for accuracy. On that date, however, the Departments had not adopted regulations pertaining to the calibration of such devices. The reason was explained by the Departments when regulations were subsequently promulgated:

This calibration procedure has been added to the proposal to remove whatever confusion may have existed relating to the phrase "calibrated and tested for accuracy within a period of time and in a manner specified by regulations of the Departments of Health and Transportation," 75 Pa.C.S. § 1547(c). *The Departments believe that "calibrated" refers to the requirement that breath test devices be tested and adjusted for accuracy in accordance with the manufacturer's specifications,* particularly following malfunction and prior to being placed back into service. It is the position of the Departments that §§ 77.5(b) and 77.6(b)(4) of the interim regulations require that this be done. *However, defense attorneys in several counties have raised the issue that the existing regulations do not specifically provide for "calibration" and several judges ... have held that "calibrated" means that breath test devices should be tested for accuracy across a range of readings on a periodic basis. Although the Departments do not agree with this reading of section 1547(c) of the Vehicle Code, they have added such a procedure to remove any doubt about the validity of breath test results.*

Pa.Bull., Vol. 14, No. 51, Saturday, December 22, 1984 (emphasis added).

■ We reject appellant's argument that the absence of regulations establishing the time and manner of calibration on May 26, 1984 rendered inadmissible the results of the breath test administered to him. In the first place, the statutory requirement for admissibility of test results is that the tests be "conducted by qualified persons using approved equipment." These requirements were met in the instant case.

■ Secondly, the statutory language "within a period of time and in a manner specified by regulations ...," refers only to the words "tested for accuracy." This language was not intended to require regulations pertaining to the "calibration" of breath testing devices. If approved equipment has been calibrated at the factory and has been tested for accuracy as "specified by regulations," there is

no reason for refusing to receive test results in evidence so long as the equipment has been used by a qualified person. Here, the calibration had been done at the factory. Moreover, the equipment had been tested for accuracy within thirty (30) days of its use as required by regulations of the Departments of Health and Transportation. This was sufficient to render the test results admissible in evidence. The failure to make a recent test of the equipment's calibration, if such was the case, was relevant with respect to the weight to be given the test results, but it did not render the results incompetent or inadmissible.

We have also examined the trial court's instructions to the jury, particularly as they pertained to the Commonwealth's burden of proving appellant guilty beyond a reasonable doubt. These instructions were full, complete, and accurate. Contrary to appellant's assertion, they did not cause the burden of proof to be shifted because of the test results. With respect to the burden of proof, the trial court was quite clear. The court specifically instructed the jurors that if they had any reasonable doubt as to whether appellant had violated either subsection (1) or (4) of 75 Pa.C.S. § 3731(a), they should find appellant not guilty of either or both charges. These instructions were not erroneous.

Therefore, we will affirm the judgment of sentence for driving while under the influence of alcohol in violation of 75 Pa.C.S. § 3731(1) and (4). However, we will reduce the fine for speeding from $85.00 to $65.00. The trial court in an opinion written pursuant to Pa.R.App.P. 1925(a) has conceded with commendable candor that the fine imposed was in violation of the statute. See: 75 Pa.C.S. § 3362. Rather than remanding for resentencing, we will amend the fine to $65.00.

The judgment of sentence for driving while under the influence of alcohol is affirmed. The judgment of sentence for speeding is modified as set forth in the foregoing opinion and as so modified is affirmed.

DEL SOLE, J., files a concurring and dissenting opinion.

DEL SOLE, Judge, concurring and dissenting:

While I have no objection to the majority's modification of the fine imposed on Appellant for speeding, I strongly disagree with the majority's conclusion that the results of the intoxilzer test administered to Appellant were admissible in evidence.

In Pennsylvania the legislature has declared by statute the circumstances where the results of a chemical test of a person's breath are sufficiently reliable to be admissible in evidence in a criminal proceeding. 15 Pa.C.S.A. § 1547(c)(1) provides:

"(c) Test results admissible in evidence.—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

(1) Chemical tests of breath shall be performed on devices approved by the Department of Health using procedures prescribed jointly by regulations of the departments of Health and Transportation. *Devices shall have been calibrated and tested for accuracy within a period of time and in a manner specified by regulations of the Departments of Health and Transportation.* For purposes of breath testing, a qualified person means a person who has fulfilled the training requirements in the use of the equipment in a training program approved by the Departments of Health and Transportation. A certificate or log showing that a device was calibrated and tested for accuracy and that the device was accurate shall be presumptive evidence of those facts in every proceeding in which a violation of this title is charged." (emphasis added)

At the time Appellant was tested, there were established provisions for inspecting the accuracy of equipment. *See:*

67 Pa.Code § 77.3—§ 77.6. To determine accuracy, the regulations provide that an inspection must be made within thirty days prior to the use of the device. In this case an intoxilyzer Model 4011–AS was used, which is an approved device, and the officer testified he performed the required inspection tests 17 days prior to Appellant's test.

Although this device was "tested for accuracy" according to the regulations, the intoxilyzer was never "calibrated". 75 Pa.C.S.A. § 1547(c)(1) states: "(d)evices shall have been calibrated and tested for accuracy within a period of time and in a manner specified by regulations of the Departments of Health and Transportation". I believe the statute mandated creation of, and compliance with, the calibration regulations as a condition precedent to the admissibility of test results. However, the Departments of Health and Transportation had not promulgated testing regulations regarding "calibration" as they had done for "accuracy" at the time Appellant was administered the intoxilyzer. Such regulations were later enacted and the Departments of Health and Transportation now require annual calibration of breath testing equipment. *See:* 67 Pa.Code § 77.26(a), adopted December 21, 1984, effective December 22, 1984.

Other jurisdictions have considered similar situations in which a statute had delegated the authority to promulgate rules or regulations to an administrative agency. Where the rules or regulations pertaining to conducting a test of blood alcohol concentration were not promulgated by the administrative agency which was delegated the authority to do so by statute, the courts have held the test results to be inadmissible. *See: State v. Jones,* La., 316 So.2d 100 (1975); *State v. Karol,* — La. —, 316 So.2d 106 (1975); *State v. Gallant,* 108 N.H. 72, 227 A.2d 597 (1967), (which held the requirements of the statute were mandatory and not permissive).

A test for calibration serves a different purpose than a test for accuracy. *See: Commonwealth v. Simmeth,* 133 P.L.J. 242 (1984). The regulations, in describing a test for accuracy, proscribe the use of a standard level of solution

(.10 percent). Five vials of this solution must be tested in the device. To establish the intoxilyzer's accuracy the same level of alcohol concentration should register. On the other hand, a test for calibration measures graduated levels. This process insures the correct value of each scale reading on the instrument, whereas with an accuracy test the machine's validity is established at only one particular level.

After examining the distinct purpose of each test procedure, it appears clear why the legislature foresaw the need to require both calibration and accuracy tests before a subject's intoxilyzer results could be deemed accurate. The necessity for such a requirement becomes readily apparent when considering the tremendous significance attributed to intoxilyzer and breathalyzer results in establishing a defendant's guilt or innocence. Regardless of the general reliability of these devices, the heavy reliance placed upon the results obtained from these tests necessitates that the directives of the statute requiring proscribed methods for calibration and accuracy testing be followed to insure the device was functioning properly at the time of its administration.

In *Commonwealth v. Hess*, 349 Pa.Super. 440, 503 A.2d 448 (1986), this court considered a situation where the approval of the device and the procedures for administrating the test in accordance with 75 Pa.C.S.A. § 1547(c)(1) were satisfied prior to trial but not prior to administration of the test. The court stated: "It cannot be said that the *reliability* of the test result is vitiated if approval of the device and the procedures comes after the administration of the test." *Id.*, 349 Pa.Superior Ct. at 442, 503 A.2d at 449. (emphasis added). In the instant case, however, the lack of calibration testing did involve the *reliability* of the test result. Further there was no testimony that the device was calibrated within one year of its administration to Appellant as required under the later developed regulations of the Departments of Health and Transportation.

Prior to admitting a defendant's test results into evidence, the breath testing instrument must be both calibrat-

ed and tested for accuracy in accordance with regulations developed by the Departments of Health and Transportation. Inasmuch as the Departments of Health and Transportation had failed to promulgate regulations regarding calibration, in addition to those already created regarding accuracy, the testing instrument utilized in this case was not calibrated as required. For these reasons, I believe this court has no choice but to rule the intoxilyzer results herein inadmissible, vacate Appellant's judgments of sentence on these charges and remand the case for a new trial.