541 A.2d 780

**COMMONWEALTH of Pennsylvania**

v.

**Richard SHIFFLER, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 9, 1987.

Filed May 9, 1988.

498

Dennis I. Turner, Pittsburgh, for appellant.

Sean K. Code, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before ROWLEY, McEWEN and POPOVICH, JJ.

ROWLEY, Judge:

This is an appeal from the judgment of sentence imposed on a jury conviction for operating a motor vehicle in violation of 75 Pa.C.S. § 3731(a)(4), Driving Under the Influence. This case presents a novel question: Whether a defendant, whose application to suppress the results of an intoxilyzer test is denied as being untimely, is barred from presenting evidence at trial concerning an alleged history of malfunctions of the intoxilyzer unit where such evidence goes to the weight of the test results, rather than their admissibility. Having thoroughly reviewed the record and arguments, we vacate the judgment of sentence and remand for a new trial.

In the early morning hours of June 28, 1987, appellant was involved in a two-car accident in the Borough of Green Tree. At the scene, Officer James Markle of the Green

Tree Police Department detected an odor of alcohol on appellant's breath. Appellant was given a field sobriety test, which he failed. Officer Markle then drove appellant to the Public Safety Building in Pittsburgh, where appellant performed field sobriety tests in front of Officer David Waddle, a certified intoxilyzer operator. When appellant failed these tests, Officer Waddle administered an intoxilyzer test on appellant. Officer Waddle ran the test twice, resulting in readings of .110 and .119. Based upon these results, appellant was charged with two counts of Driving Under the Influence of Alcohol or a Controlled Substance, 75 Pa.C.S.A. §§ 3731(a)(1) and (4).

Appellant was formally arraigned on September 25, 1986. On October 24, 1986 appellant filed a timely Motion to Suppress Evidence alleging, *inter alia*, that (a) statements by him were not knowingly, intelligently and voluntarily made; (b) he did not receive his Miranda rights; (c) there existed no probable cause for his arrest; (d) he did not consent to the intoxilyzer test; (e) the test results were fruit of an illegal arrest; and (f) his constitutional rights were violated. Counsel for appellant admitted that he knew precisely which machine had been used to test his client, yet he did not challenge the accuracy of the machine in his motion. Argument on the Motion to Suppress was set for November 25, 1986, immediately after which, trial on the charges would proceed.

At argument on November 25, immediately prior to trial, appellant's counsel presented an Amended Motion to Suppress alleging that the intoxilyzer device on which appellant had been tested had malfunctioned at least eleven times during the two-month time period, April 19 through June 19, 1986. Appellant argued that the intoxilyzer machine should have been removed from service pursuant to 67 Pa.Code § 77.24(b)(2)[1]. The Commonwealth argued that the Amended Motion should be denied because it was not timely filed. Appellant's counsel responded by stating that

---

**1.** 67 Pa.Code § 77.24(b)(2) states in relevant part:
   [T]he breath test device will be removed from service ... if one of the following occurs:

the information contained in the Amended Motion had only become available to him on the previous day. Although not definitively described in the Amended Motion, the information concerning malfunctions appears to have been derived from accuracy and calibration log books kept pursuant to 75 Pa.C.S.A. § 1547(c)(1).[2]

A reading of the record in its entirety reveals that the "previously unavailable" information concerning malfunctions came to light in the following manner. Based upon a purported ruling by Judge Little [the trial judge in this case] in a previous matter, counsel for appellant believed that information concerning the log books "was not discoverable," so he did not request the information. Nevertheless, Charles H. Roberts, an expert retained by appellant's counsel to aid in defense of an unrelated DUI case before Judge Dauer, examined the intoxilyzer log books pursuant to a discovery order issued by Judge Dauer. During that review of the log books Roberts purportedly found evidence of malfunctions of the machine used to test appellant.

The suppression court ultimately refused to entertain the Amended Motion. In so ruling, the court focussed on

> (i) If the difference between the results of the two actual alcohol breath tests is .02 or more, for machines read to the second decimal place, or .020 or more for machines read to the third decimal place.
> (ii) If the simulator test yields a result less than .09% or greater than .10% when the breath test device is read to the second decimal place, or if the simulator test yields a result less than .090% or greater than .109% when the breath test device can be read to the third decimal place.

Additionally, 67 Pa. Code § 77.25(b)(4) provides:

> Breath test equipment which has malfunctioned or which fails an accuracy inspection test shall be placed out of service and shall be serviced or repaired, as necessary, by the manufacturer or its authorized representative or a person who has received comparable training or instruction and shall be tested under § 77.26(b) (relating to periodic calibration of Type A breath test equipment) prior to being placed back into service.

2. 75 Pa.C.S.A. § 1547(c)(1) states in relevant part:

> A certificate or log showing that a device was calibrated and tested for accuracy and that the device was accurate shall be presumptive evidence of those facts in every proceeding in which a violation of this title is charged.

counsel's failure to seek discovery pursuant to Rules 305 and 306. An extended dialogue occurred between appellant's counsel and the court, ending with this statement by the court:

> Once the discovery phase begins, at that point, if you are going to challenge the accuracy of the machine, you had all the opportunities at that point in time to come in with your expert, file the necessary documents, and have ... the Commonwealth put on notice; as to the expert, just test the machine for accuracy, and do whatever you have to do under the regulations of the Department of Transportation. It has to be done within the time frame of the discovery. The only issue is whether or not you had knowledge, what machine was used to be tested, and that's clear that the machine was tested.

N.T. at 13. Thus, the court appears to have denied the Amended Motion to Suppress on the grounds of failure to comply with the thirty-day period set forth in Rule 307. The court apparently did not accept as valid counsel's reason for the untimeliness, that the log books were not discoverable, and told counsel that he should have complied with the discovery provisions of the Criminal Rules within the specified time period.

At this point, just prior to trial, discussion shifted to a subpoena. Earlier in the argument, appellant's counsel had stated that he served a subpoena on Officer Waddle, asking the officer to bring to trial the log book containing entries relating to the malfunctions.[3] The Commonwealth moved to quash the subpoena, after which the following discussion took place:

> MR. TURNER [Appellant's counsel]: If I may make a comment on that and take testimony from Officer Waddle?

> THE COURT: I am going to quash it.

3. Appellant's counsel stated for the record that the subpoena had been stamped by the police department's intake officer, Chief Moser, and that counsel had a copy of the subpoena in court. The subpoena was never entered as evidence.

MR. TURNER: The procedure that the Public Safety Building—

THE COURT: I made my ruling. I quashed the subpoena. You may proceed on the original [Suppression Motion].

N.T. at 13–14. It appears from the record that the suppression judge quashed the subpoena requesting Officer Waddle to bring the log books to trial solely because appellant's counsel had chosen not to request the log books in discovery. Testimony then was taken at the suppression hearing, the judge denied the motion, and the trial commenced after a jury was chosen. At the close of trial, appellant was convicted of violating § 3731(a)(4) only.[4]

Appellant raises three issues on appeal. We need not address his first and second issues because of our disposition of the third issue: Whether the trial court erred in precluding *at trial* the testimony of Mr. Roberts concerning the log books. The trial court unequivocally stated its position concerning Mr. Roberts' testimony at a sidebar immediately following the opening statements:

> In your opening, you made reference to the fact if there was any testimony that would show that the machine was not operable and not taken out of service. This Court has ruled on its issue in preliminary matters in discovery. I am going to sanction at this point, counsel, any testimony as to the fact that the machine should not have been in service at the time, it is not going to be proper. I am going to sanction at this point to elicit any testimony from any Commonwealth witness or defense witness, if this case should get that far. ... [A]ny elicitation from any witness, Commonwealth or defense witness, will subject you to contempt of proceedings.

N.T. at 88–89. The trial court again warned counsel a few moments later: "I sanction you, based on my pretrial rules, as to any elicitation of *any* testimony as to the findings that

---

4. § 3731(a)(4) states: "A person shall not drive, operate or be in actual physical control of the movement of any vehicle while ... the amount of alcohol by weight in the blood of the person is 0.10% or greater."

the machine should not be in service will subject you to personal contempt in this court." N.T. at 90 (emphasis added).

We hold that the trial court abused its discretion in precluding the defense from offering at trial any testimony going to the *weight* of the evidence against appellant. This Court has held that "[i]f a defendant wishes to contest *the reliability* of the blood alcohol test results proffered by the Commonwealth, he is statutorily permitted to do so." *Commonwealth v. Speights*, 353 Pa.Super. 258, 266, 509 A.2d 1263, 1267 (1986) (emphasis added). In the earlier case of *Commonwealth v. Trefry*, 249 Pa.Super. 117, 375 A.2d 786 (1977), this Court held: "At trial, the results of a test, as indicative of intoxication at a relevant point in time, may be attacked or contradicted by any competent evidence. The weight to be accorded test results then properly rests with the finder of fact." *Id.*, 249 Pa.Superior Ct. at 130, 375 A.2d at 793 (footnote omitted). In a case such as this, where appellant has only been convicted of § 3731(a)(4), the accuracy of the test becomes crucial. It is imperative that a defendant, in order to receive a fair trial, must be permitted to attack reliability of the test results.

In the case at bar, appellant was precluded from attacking the reliability of the intoxilyzer tests at trial, because of rulings the trial court had made in the suppression hearing. To reiterate, appellant's Amended Motion, alleging malfunctions, was denied as untimely. The government subsequently entered the results into evidence at trial. Appellant does not now complain that admission of the test results was error. He merely seeks to use, at trial, evidence which he would have proffered at the suppression hearing, in order to attack the reliability of the machine that produced the results.

Specifically, appellant sought to place Mr. Roberts on the stand at trial and have him testify as a fact witness that he had read the police certification logs for this particular machine and that the logs showed that certain malfunctions occurred. While such testimony would not ordinarily constitute "the best evidence," and would be properly excluded

as hearsay, the trial judge in this case had quashed the subpoena to produce the logs at trial. Appellant had no other avenue open to him. *See* E. Cleary, ed., *McCormick on Evidence,* § 230 (1984). Competent evidence of the machine's malfunction is certainly relevant and material because it has a direct impact upon the weight the fact-finder would accord to the evidence.

Moreover, Pa.R.Crim.P. 323(j) specifically provides that where a defendant has moved for the suppression of evidence prior to trial, he shall not be precluded from challenging that evidence once it has been introduced at trial:

> If the court determines that the evidence shall not be suppressed, such determination shall be final, conclusive and binding at trial, except upon a showing of evidence which was theretofore unavailable, but *nothing herein shall prevent a defendant from opposing such evidence at trial upon any ground except its suppressibility.*

Pa.R.Crim.P. 323(j), 42 Pa.C.S.A. In the record of the case before us, the trial court repeatedly made reference to its rulings at the suppression hearing, as the basis for precluding Mr. Roberts testimony. Under Rule 323(j), this was clearly error.

Judgment of sentence is vacated. The case is remanded for a new trial. Jurisdiction is relinquished.