584 A.2d 1075

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,

v.

Robert S. PESTOCK, Appellee.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 24, 1990.

Decided Dec. 18, 1990.

Reargument and Reconsideration Denied Feb. 14, 1991.

Timothy P. Wile, Asst. Counsel-in-Charge of Appellate Section, with him, Harold H. Cramer, Asst. Chief Counsel,

and John L. Heaton, Chief Counsel, Harrisburg, for appellant.

Robert E. Stewart, DeAngelis, Stewart & Associates, Pittsburgh, for appellee.

Before McGINLEY and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The Commonwealth of Pennsylvania, Department of Transportation (Department) has appealed from an order of the Court of Common Pleas of Allegheny County sustaining the driver's license suspension appeal of Robert S. Pestock.

At the *de novo* hearing on Pestock's appeal, the Department introduced the testimony of three Pittsburgh police officers who were involved in Pestock's arrest and subsequent intoxilizer testing on October 22, 1989. Pestock offered no testimony on his own behalf. The Department's witnesses described the sequence of events on that date as follows.

Officer David Trautman testified that he came upon an accident on East Ohio Street in Pittsburgh. Two vehicles were at the scene, which Officer Trautman described as a Buick Skylark belonging to Pestock and a Dodge sedan belonging to a Mr. Bradford. He stated that there were no other occupants in Pestock's vehicle. When the officer arrived, he found Mr. Pestock and Mr. Bradford arguing loudly with a lot of yelling and pushing. He attempted to break up the fight. Pestock originally backed away but then jumped back toward Bradford, yelling and screaming. Officer Trautman physically restrained him and noticed he had a strong smell of beer on his breath. Further, Pestock's eyes were glassy, his speech was slurred and he was unstable on his feet and combative. Officer Trautman placed Pestock under arrest for driving while intoxicated and transported him to the police station for a breath test. Officer Trautman was assisted at the scene by Officer Yvonne Overholt, who corroborated much of his testimony.

At the station, Pestock was asked to submit to a breath test by Officer Donald Jones, who was the operator of the intoxilizer machine. Pestock agreed to take the test and Officer Jones explained the procedure for producing a valid breath sample. Officer Jones stated that he first verified that the machine was properly calibrated and then proceeded with the test. Although he had explained that Pestock had to blow into the machine forcefully for about ten seconds, until a tone sounded and then stopped, Officer Jones stated that Pestock was allowing air to escape around the sides of the mouthpiece. Because of this, the machine registered a deficient sample with a readout of .143. Officer Jones testified that he gave Pestock several opportunities to complete the test, explaining the proper procedure each time. Although a second reading of .131 was subsequently recorded, it too was a deficient sample. Printouts of both readings, marked "deficient sample," were introduced into evidence. Based upon Pestock's failure to supply a sufficient sample, Officer Jones recorded a refusal and Pestock's driver's license was suspended.

On appeal to common pleas court, Pestock argued: 1) that Officer Trautman did not have reasonable grounds to believe that he had been driving under the influence of alcohol because Pestock was not behind the wheel of his car when the officers arrived on the scene; 2) that the Department failed to produce evidence to establish that the intoxilizer machine was in working order; and 3) that the two readings obtained were within .02 of each other and therefore could be used for prosecution. Although the trial court judge did find that Pestock provided two deficient samples, he did not otherwise make specific findings of fact. He concluded that "taken together, Defendant's arguments are compelling," trial court opinion at 1, and sustained the appeal. The Department's appeal to this Court followed.

In a driver's license suspension appeal arising under Section 1547(b)(2) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(2), in order to establish a *prima facie* case, the Department must prove: 1) that the defendant was placed

under arrest upon the charge of driving while intoxicated and that the arresting officer had reasonable grounds to believe the Defendant was driving while intoxicated; 2) that the defendant was requested to submit to a breath test; 3) that he refused to do so; and 4) where the issue is raised, that the defendant was warned that his operating privileges would be suspended or revoked upon refusal to submit to a chemical test. *Ostrander v. Department of Transportation, Bureau of Driver Licensing,* 116 Pa.Commonwealth Ct. 243, 541 A.2d 441 (1988). Our scope of review, as recently stated by our Supreme Court in *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989), is limited to determining whether the findings of fact of the trial court are supported by substantial evidence and whether the trial court committed an error of law or an abuse of discretion in reaching its decision.

The Department first argues that the trial court erred in concluding that Officer Trautman did not have reasonable grounds to believe that Pestock was driving while intoxicated. We must agree. In *Polinsky v. Department of Transportation,* 131 Pa.Commonwealth Ct. 83, 569 A.2d 425 (1990), we reiterated that the test for determining whether an arresting officer had reasonable grounds to believe a person was operating a motor vehicle under the influence of alcohol is whether a reasonable person in the officer's position, viewing the facts and circumstances as they appeared to the officer at the time, could have reached such a conclusion. Further, we have held that it is not necessary that the arresting officer actually see the person operating the vehicle. *See, e.g., Keane v. Department of Transportation,* 127 Pa.Commonwealth Ct. 220, 561 A.2d 359 (1989); *Haklits v. Commonwealth,* 44 Pa.Commonwealth Ct. 198, 418 A.2d 772 (1979).

■ Here, Officer Trautman testified that he arrived at the scene of an accident to find Pestock and Bradford loudly arguing. He testified without objection that the two damaged vehicles belonged to Pestock and Bradford and

that he observed no other occupants in the Pestock vehicle. Officer Overholt testified that she was called to the scene because of a fight between the two drivers, one of whom was refusing to exchange information with the other. She stated that there was no one else in the Pestock vehicle. Both officers testified that Pestock seemed to be intoxicated based upon their observations of his eyes, speech and gait. We must conclude, under these circumstances, that Officer Trautman had reasonable grounds to assume that Pestock had been operating his vehicle while under the influence of alcohol.

The Department's second argument addresses the latter two grounds for the trial court's order: that it presented no evidence to establish that the intoxilizer machine was working properly and that there was no refusal because two breath test results were obtained which were within .02 of each other.

■ With respect to the accuracy of the machine, we note that Officer Jones testified, without objection, that the "[m]achine ran through a sequence of internal checks ... was calibrated and proven to be correct to proceed with the test." Notes of Testimony at 22. Pestock seems to be arguing that documentary evidence is required. However, we can find no such requirement and, in any event, must conclude that Pestock has waived argument on this point by having failed to object to the testimony.

The Department's regulations set forth in 67 Pa.Code § 77.24 establish the procedures to be used for breath tests. Subsection (b) of that section provides, in relevant part:

(b) ... The procedures for alcohol breath testing shall include, at a minimum:

(1) Two consecutive actual breath tests, without a required waiting period between the two tests.

(2) ... The lower of the two actual breath test results will be the result used for prosecution. The test results will be disregarded ... if one of the following occurs:

(i) If the difference between the results of the two alcohol tests is .02 or more....

■ Although the regulation does not address the situation of deficient samples (which, in this instance, happen to be within .02 of each other), we must conclude that such samples do not constitute "actual breath tests." An "alcohol breath test" is defined in 67 Pa.Code § 77.22 as "chemical testing of a sample of a person's expired breath ... in order to determine the concentration of alcohol in the person's blood." In this instance, the machine itself signaled the operator that a deficient sample was obtained, an indication that the true concentration of alcohol could not be determined. Further, the officer testified that Pestock did not follow his instructions and that he continually allowed air to escape around the sides of the machine's mouthpiece, rather than closing his mouth tightly around the mouthpiece as directed. We have held that such conduct evidences less than a total conscious effort and is tantamount to a refusal to take the test. *Budd Appeal*, 65 Pa.Commonwealth Ct. 314, 442 A.2d 404 (1982).

■ The Department in this case clearly met its burden of making out a *prima facie* case. Having done so, the burden shifted to Pestock to prove that his refusal was not knowing or conscious or that he was physically unable to take the test. *Waigand v. Commonwealth*, 68 Pa.Commonwealth Ct. 541, 449 A.2d 862 (1982). Because Pestock failed to present any evidence whatsoever, it was error for the trial court to have concluded that he met this burden.

Accordingly, we reverse the order appealed from and reinstate the suspension.

### ORDER

AND NOW, this 18th day of December, 1990, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby reversed and the suspension is reinstated.

KELLEY, Judge, dissenting.

I respectfully dissent. This case is yet another example of how Section 1547 of the Pennsylvania Motor Vehicle Code, 75 Pa.C.S. § 1547, commonly referred to as the Implied Consent Law, confuses and combines the criminal aspects of a DUI investigation with the civil suspension of operating privileges for refusing to take a breath test. Although we have held that the Implied Consent Law is not penal in nature and that the suspension proceeding for refusing to take a breathalyzer test is an independent civil proceeding which is separate and distinct from any criminal charges brought against a motorist,[1] Section 1547 provides for the use of results and refusals in Section 3731,[2] criminal proceedings for DUI.

In *O'Connell*,[3] our Supreme Court recognized the difficulty of separating the criminal and civil aspects of license suspension cases, stating that "these requests to take breathalyzer tests take place as part of the investigation conducted by police in regards to a drunk driving charge which is criminal in nature." Our Supreme Court has also indicated that the purpose and remedial objective of Section 1547 is to provide the police with evidence to prosecute an intoxicated driver. *Commonwealth v. McFarren*, 514 Pa. 411, 525 A.2d 1185 (1987). Similarly, the Superior Court of Pennsylvania has recognized that the Commonwealth's interest reflected in the Implied Consent Law is to obtain evidence that can be used against drunk drivers in criminal proceedings. *Commonwealth v. Quarles*, 229 Pa.Superior Ct. 363, 324 A.2d 452 (1974).

To constitute a breath test under the Department's regulation for administration of chemical testing,[4] two elements must be present: 1) two consecutive breath tests without a

1. *Hando v. Commonwealth of Pennsylvania,* 84 Pa.Commonwealth Ct. 63, 478 A.2d 932 (1984).

2. 75 Pa. C.S. § 3731.

3. *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989).

4. 67 Pa.Code § 77.24.

required waiting period between the two tests, and 2) a reading wherein the difference between the two tests is less than .02. *Bonise v. Department of Transportation,* 102 Pa.Commonwealth Ct. 6, 517 A.2d 219 (1986). This interpretation of Section 77.24 was cited with approval by Judge Narick in *Ostrander v. Department of Transportation, Bureau of Driver Licensing,* 116 Pa.Commonwealth Ct. 243, 541 A.2d 441 (1988), where we held that because both elements were lacking, there was not a valid test. In other words, had both elements been met, the test would have been valid.

Once a valid chemical test has been provided, the results may be used in a Section 3731 DUI proceeding. Section 3731 provides as follows:

(a) **Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:

. . . .

(4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.

. . . .

(e) **Penalty.—**

(1) Any person violating any of the provisions of this section is guilty of a misdemeanor of the second degree. . . .

In this case, Pestock cooperated with the police by providing two breath samples after he was arrested for DUI.[5] The first test indicated a blood alcohol content of .143% and the second .131%. Having satisfied the requirements of Section 77.24 as interpreted in *Bonise,* Pestock provided a valid test. Because both of the breath samples provided by Pestock clearly exceeded the .10% threshold established in Section 3731, they were sufficient to convict him of DUI and to satisfy the evidentiary purpose of Section 1547.

5. *Budd Appeal,* cited by the majority, is distinguishable from this case because in that case two readings were not obtained.

The majority holds that Pestock refused to submit to chemical testing because he allowed air to escape around the sides of the mouthpiece, causing the intoxilizer printout to read "deficient sample." The majority focuses on the Section 77.24 requirement of "two consecutive *actual* breath tests," to hold that a printout marked "deficient sample" cannot constitute an actual test. Such reliance on form over substance is not supported by statute nor case law and permits further unwarranted intrusion of the criminal process into civil suspensions.

As stated above, the purpose of Section 1547 is to obtain evidence for a DUI conviction by finding that a motorist's blood alcohol content is .10% or greater. The printouts in question indicated that the values printed, both of which exceeded .10%, were the "highest obtained." Had air not escaped from the sides of the mouthpiece, the values printed would have been even higher.

It would be patently unfair to suspend Pestock's operating privileges based on refusal after he satisfied *Bonise* and provided samples sufficient to sustain a DUI conviction. In addition, the majority's holding would unnecessarily restrict our holding in *Bonise,* exceed the evidentiary purpose of Section 1547, and add to the confusion between the criminal and civil aspects of DUI proceedings by condoning the search for evidence not required to support a conviction.

I would hold that once two readings of .10% or greater are obtained, the purpose of the statute being satisfied for a DUI conviction, there cannot be a refusal.