594 A.2d 700

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**George MABREY.**

Superior Court of Pennsylvania.

Argued May 8, 1991.

Filed July 25, 1991.

438

Stephen B. Harris, Asst. Dist. Atty., Warrington, for Com., appellant.

Mel D. Kardos, Newtown, for appellee.

Before ROWLEY, President Judge, and CIRILLO and JOHNSON, JJ.

JOHNSON, Judge:

The Commonwealth appeals from an order which suppressed the breath test results obtained from an intoxilyzer in the course of a prosecution for driving under the influ-

ence (DUI). It asks us to find error in the suppression hearing court's conclusion that the deviations found in the prior results of the machine in question arose from mechanical malfunction, rather than as a result of poor breath samples. The Commonwealth contends that the evidence should have been found competent and that the deviations are then relevant only to the weight to be given to the test results by the fact-finder and not to the admissibility of the test.

We reject these contentions of the Commonwealth. We find the regulations to be clear and the conclusions of the suppression hearing court to be supported by sufficient evidence. Accordingly, we affirm the order which suppressed the breath test results as having been secured in violation of the regulations of the Department of Transportation relating to test procedures and accuracy certification for breath test devices, 67 Pa.Code §§ 77.21–77.27.

George Mabrey's automobile was pulled over late one night by Officer Mark Blaszczyk. At the suppression hearing, Officer Blaszczyk testified that he had seen Mabrey's vehicle swerving on the roadway. The officer further testified that Mabrey's breath smelled strongly of alcohol, that Mabrey's eyes were glassy and his speech slurred. The officer also testified that Mabrey failed field sobriety tests and appeared to be under the influence of alcohol. Mabrey was transported to police headquarters where, after consulting with an attorney, he agreed to take an intoxilyzer test. Officer Blaszczyk administered the test through the use of an Intoximeter 3000, and the test indicated that Mabrey's blood alcohol content was 0.16%.

The evidence produced at the suppression hearing indicated that the intoxilyzer machine in question had been calibrated within a year of Mabrey's tests and that the machine had last been tested for accuracy approximately two weeks before Mabrey's test. However, the evidence also indicated that, between its last calibration and Mabrey's test, the intoxilyzer had, on seven occasions, failed to render consecutive results on the same subject differing by

no more than 0.020%. Mabrey sought and was granted suppression of the results of his intoxilyzer test, not on the basis that the machine had malfunctioned during *his* test, but on the basis that the machine had malfunctioned while testing other subjects but was not re-calibrated as required by the applicable regulations. The Commonwealth appeals.

Our legislature has provided that, under certain conditions, the results of chemical testing for blood alcohol level shall be admissible in court. The Motor Vehicle Code provides, in relevant part:

(c) **Test results admissible in evidence.**—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 ..., the amount of alcohol ... in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

(1) Chemical tests of breath shall be performed on devices approved by the Department of Health *using procedures prescribed jointly by regulations* of the departments of Health and Transportation. Devices *shall have been calibrated and tested for accuracy within a period of time and in a manner specified by regulations* of the Departments of Health and Transportation.... A certificate or log showing that a device was calibrated and tested for accuracy *and that the device was accurate* shall be presumptive evidence of those facts in every proceeding in which a violation of this title is charged.

75 Pa.C.S. § 1547(c) (emphasis added).

Pursuant to this statute, regulations governing the proper administration of intoxilyzer tests were developed. These regulations read, in pertinent part:

(b) *Procedures.* ... The procedures for alcohol breath testing shall include, at a minimum:

(1) Two consecutive actual breath tests, without a required waiting period between the two tests.

(2) ... The test results will be disregarded, and the breath *device will be removed from service* ... *if* one of the following occurs:

(i) If the *difference between the results of two actual alcohol breath tests is* .02 or more, for machines read to the second decimal place, or *.020 or more* for machines read to the third decimal place.

(c) *Procedures for adjustment.* Breath test equipment which fails the testing under ... subsection (b) shall be placed out of service and shall be serviced, repaired and adjusted, as necessary, ... prior to being placed back into service.

67 Pa.Code 77.24(b) and (c) (emphasis added).

At the suppression hearing, various officers testified regarding the entries in the log in which results of consecutive breath tests differed by more than 0.020%. Generally, the explanations given were related to how forcefully the subject exhaled into the device. Although the log generally reflected the officer's opinion of why differing results were achieved, one test of a Mr. Sweeney, which differed by 0.023%, had no such notation. One inconsistent reading was alleged to have occurred as a result of a solution jar which had not been tightly screwed to the machine. On behalf of the defendant, Dr. Richard Saferstein testified that the velocity of the breath sample should not cause the results to differ by as much as .020%.

In granting suppression, the court stated:

Although an explanation that an improper breath sample was given might be credible in one or two instances, the fact that so many deviations occurred indicates that the machine should have been removed from service and fully checked and calibrated. Also, the fact that no notation was made as to the deviations in the test performed on Mr. Sweeney is a factor affecting the credibility of the Commonwealth's case. Moreover, the test performed upon Mr. Grow which yielded a variance of .044 is the greatest indicia of machine malfunction. Despite the officer's testimony that the subject performed an improp-

er breath sample, this Court was persuaded that serious questions about the accuracy of the machine were raised, and should have been a concern to the Bensalem Township Police Department under the circumstances. Therefore this Court finds that the machine should have been taken out of service until it was recalibrated or repaired as required by the statute.

Opinion of December 20, 1990, at 7.

On appeal, the Commonwealth argues first that evidence that the intoxilyzer has malfunctioned goes to the weight attributable to the results, but not its admissibility. The Commonwealth argues in the alternative that the trial court erred in determining that the machine had malfunctioned.

For the proposition that evidence of malfunctions is properly admitted to attack the weight of intoxilyzer results, but not its admissibility, the Commonwealth relies upon *Commonwealth v. Sweet*, 232 Pa.Super. 372, 335 A.2d 420 (1975), *Commonwealth v. Sesler*, 358 Pa.Super. 582, 518 A.2d 292 (1986), and *Commonwealth v. Shiffler*, 373 Pa.Super. 497, 541 A.2d 780 (1988).

In *Commonwealth v. Sweet*, this court held that the result of an intoxilyzer test was properly admitted where the Commonwealth had satisfied the then-existing statutory requirements for admission, and that the defendant's concerns regarding the undocumented composition of the simulator solutions would go only to the weight of the test result, not its admissibility. The present case, however, is controlled by regulations which specify that, where the machine renders consecutive actual breath test results which vary by more than 0.020%, the results are inadmissible and the machine is to be taken "out of service and serviced, repaired and adjusted ... prior to being placed back into service." § 77.24(c). *Sweet* is inapposite, for the issue here involves the Commonwealth's purported failure to comply with the statutes and regulations which are the only vehicle through which the results may be introduced at trial.

The admissibility of blood alcohol test results depends upon strict compliance with 75 Pa.C.S. § 1547(c). In *Commonwealth v. McGinnis*, 511 Pa. 520, 515 A.2d 847 (1986), even though the model of testing device had been approved pursuant to § 1547, test results were held inadmissible on the basis that the machine had been modified.

Further, unlike in *Sweet*, the terms of § 1547 go on to require compliance with "procedures prescribed jointly by regulations of the departments" and that the machines be "calibrated and tested for accuracy within a period of time and in a manner specified by the regulations...." § 1547(c)(1). Compliance with the terms of 67 Pa.Code § 77.24, therefore, determines whether the results of the test will be admissible. *Commonwealth v. Diulus*, 391 Pa.Super. 379, 571 A.2d 418 (1990). In *Diulus*, this court held that, because the regulation requires "two consecutive actual tests," a single breath test result fails to satisfy the requirements of the regulations and is inadmissible. Similarly, admissibility in the instant case depends upon whether the procedures employed by the Commonwealth complied with *both* § 1547(c) and § 77.24.

In *Commonwealth v. Sesler, supra,* we held that evidence that an intoxilyzer had never been calibrated since it left the manufacturer went only to the weight of the test result and not to its admissibility. Sesler, however, had been tested before the promulgation of regulations mandating specific procedures for the testing, calibration and accuracy testing of equipment and requiring exclusion of test results for failure to comply. This court held then that the results were properly admitted on the basis that, when conducted, the test satisfied the statutory requirements for admissibility and no regulations then existed with which to comply. The Commonwealth's reliance on *Sesler* is, therefore, misplaced.

Finally, in *Commonwealth v. Shiffler, supra,* this court reversed a conviction where the trial court had excluded evidence that the intoxilyzer device on which the defendant had been tested had previously malfunctioned. Our opinion

in that case made clear, however, that the defendant was denied suppression because his motion to suppress had been untimely. *Shiffler* cannot be relied upon for the proposition that an order granting a timely motion to suppress test results rendered by a malfunctioning machine is improper.

To resolve this issue, we look to and reaffirm our position in *Diulus, supra,* and hold that the statutory requirements of 75 Pa.C.S. § 1547 and the regulations in 67 Pa.Code § 77.24 *both* establish the requisite procedures for a valid breath test. We further hold that, when the statute or regulations require that a machine be taken out of service, subsequent test results will be inadmissible if rendered before "service, repair and adjustment, as necessary," occurs.

We are left, then, to determine whether the suppression court erred in determining that the regulations required the machine in question be removed from service and calibrated. These devices need not be removed from service merely because consecutive results on the same subject differ by more than .020%, *Commonwealth Department of Transportation, Bureau of Driver Licensing v. Pestock,* 136 Pa.Cmwlth. 694, 584 A.2d 1075 (1990); rather, removal from service is required only where such variance is found as to "two *actual* alcohol breath tests...." § 77.24(b)(2)(i); *Pestock.* In *Pestock,* the Commonwealth Court held that "[a]lthough the regulation does not address the situation of deficient samples ..., we must conclude that such samples do not constitute 'actual breath tests.'" *Pestock,* 136 Pa. Cmwlth. at 700, 584 A.2d at 1078. Therefore, whether the suppression court erred in holding that the machine was required by the regulations to be removed from service depends upon whether sufficient evidence was presented upon which that court could base its finding that the results were caused by a malfunction, not deficient breath samples.

We believe that the suppression court's conclusion that the machine in question had malfunctioned was supported by sufficient evidence. The court considered the explana-

tions proffered by the officers, as well as the explanations entered in the log. The court considered Dr. Saferstein's testimony that the officers' explanations did not account for the discrepancies in the log. Finally, the court made a determination of credibility with which we may not interfere. *Commonwealth v. Jackson*, 506 Pa. 469, 485 A.2d 1102 (1984); *Commonwealth v. Torres*, 396 Pa.Super. 499, 578 A.2d 1323 (1990). We hold that the suppression court's determination that the intoxilyzer in question had malfunctioned and was required by the regulations to be removed from service was supported by the evidence presented, and accordingly affirm the order granting suppression of the results of Mabrey's test.

Order affirmed; case remanded; jurisdiction relinquished.