612 A.2d 1043

COMMONWEALTH of Pennsylvania

v.

Robert T. THILL, Appellant.

Superior Court of Pennsylvania.

Argued June 1, 1992.

Filed Aug. 6, 1992.

486

Martin W. Sheerer, Pittsburgh, for appellant.

Kevin F. McCarthy, Asst. Dist. Atty., Pittsburgh, for Com.

Before ROWLEY, President Judge, and WIEAND, CIRILLO, OLSZEWSKI, MONTEMURO, POPOVICH, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

JOHNSON, Judge:

Robert T. Thill appeals from Judgment of Sentence entered November 16, 1990, in the Court of Common Pleas of Allegheny County. We are asked to review the trial court's determination that breathalyzer test results were properly admitted at trial in the face of a contention by Thill that the procedures employed in operating the testing equipment were in violation of applicable regulations. We agree with the suppression court's determination that the test in question did not satisfy the regulatory requirement that the simulator solution be produced and tested for accuracy by independent laboratories. However, we reject that court's conclusion that a violation of the applicable regulations does not constitute sufficient justification to warrant suppression. Instead, we conclude that Thill was entitled to have the results of the test suppressed and we are constrained to reverse judgment of sentence and remand for a new trial.

On December 2, 1989, at approximately 5:00 a.m., Officer R. Carter, of the Pittsburgh Police Department, arrived on the scene of a one car accident on East Ohio Street in Allegheny County. Officer Carter determined that Thill had been the operator of the vehicle at the time of the accident. When asked what had occurred, Thill responded that the car had left the road and hit a pole. Officer Carter noticed that Thill's eyes were "glassy" and that Thill had an odor of alcohol on his breath. Officer Carter arrested Thill, who complied with the Officer's request to submit to a test of his breath to determine blood alcohol content. That test yielded a reading of 0.224%.

Thill was charged with operating a vehicle while under the influence of alcohol to a degree which rendered him incapable of safe driving, 75 Pa.C.S. § 3731(a)(1), and operating a vehicle while the amount of alcohol by weight in his blood was .10% or greater, 75 Pa.C.S. § 3731(a)(4). Thill filed a pre-trial motion to suppress the test results on the basis that the solution used to calibrate the breath testing device, and to test it for accuracy, was not produced in

compliance with the applicable statute and regulation: 75 Pa.C.S. § 1547(c)(1) and 67 Pa.Code. § 74.24(d).

The statutory section relied upon provides as follows:

**§ 1547. Chemical testing to determine amount of alcohol or controlled substance**

. . . .

**(c) Test results admissible in evidence.**—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

*(1) Chemical tests of breath shall be performed on devices approved by the Department of Health using procedures prescribed jointly by regulations of the departments of Health and Transportation. Devices shall have been calibrated and tested for accuracy within a period of time and in a manner specified by regulations of the Departments of Health and Transportation. ...*

75 Pa.C.S. § 1547(c) (emphasis added). The applicable regulations, adopted jointly by the Departments of Health and Transportation, state:

**§ 77.24. Breath test procedures.**

. . . .

**(b) Procedures.** ... The procedures for alcohol breath testing shall include, at a minimum:

. . . .

(2) One simulator test using a simulator solution designed to give a reading of .10%, to be conducted immediately after the second actual alcohol breath test has been completed. ... The tests results will be disregarded, and the breath test device will be removed from service ... if one of the following occurs:

. . . .

(ii) If the simulator test yields a result less than .09% or greater than .10% when the breath test device is read to the second decimal place, or if the simulator test yields a result less than .090% or greater than .109% when the breath test device can be read to the third decimal place.

. . . .

**(d) Simulator solution certification.** The manufacturer of simulator solution shall certify to the test user that its simulator solution is of the proper concentration to produce the intended results when used for accuracy inspection tests or for calibrating breath test devices. *This certification shall be based on gas chromatographic analysis by a laboratory independent of the manufacturer.*

67 Pa.Code § 77.24 (emphasis added).

In support of his motion to suppress, Thill contended that the simulator solution had not been "analy[zed] by a laboratory independent of the manufacturer," although such independent analysis is required by the regulation. To rebut this contention, the Commonwealth introduced the testimony of Dr. Charles Winek, Director of the Department of Laboratories for Allegheny County.

Dr. Winek testified that the Department of Laboratories is composed of two divisions: the Forensic Sciences Division, and the Public Health Division. Suppression Transcript, May 8, 1990, at 4. Dr. Winek further testified that the Forensic Sciences Division includes the Toxicology Laboratory Section, and that the Public Health Division includes the Environmental Health Laboratory Section. *Id.* at 4–5. Dr. Winek testified that the Environmental Health Section manufactures simulator solution for the Department of Laboratories, and that the Toxicology Section tests and certifies that solution for the Department of Laboratories. *Id.* at 5. In support of the Commonwealth's position that the two laboratories are independent, Dr. Winek testified that the Environmental Health Section and the Toxicol-

ogy Laboratory Section have separate independent budgets, and that the two sections are managed by different individuals. *Id.* at 6. Dr. Winek also stated that "[n]o one from one section or the other section has authority in the other section.... They do not cross with authority, they do not cross with budgets. They have no control over each other's sections." *Id.* at 7.

On cross-examination, however, the following took place:

Q. Neither of these [sections] are independent of you, are they?

A. No.

Q. The manufacturer or the testing, they are both under your supervision?

A. They're under my administration, yes.

Q. They are both part of the one department of Allegheny County government, the Department of Laboratories?

A. That's correct.

. . . .

THE COURT: Does the Department of Laboratories, does the forensic science section? Do you certify anyone other than the one produced by the environmental chemistry section?

THE WITNESS: No.

. . . .

Q. When you make this solution, I understand it's disseminated to the various police departments that use breath test devices in Allegheny County. And you were talking about the economics. I want to focus on that for a minute and ask, do those police departments pay your laboratory for the product, or does the County just supply it to them?

A. They do not pay for the product, they do not pay for the instruments.

Q. The County owns it all, don't they?

A. (Indicates yes.)

Q. So, it's all one operation by the County of Allegheny?

A. Essentially, yes. It's the only one like it in the state. *Id.* at 12, 18, 19–20.

The Commonwealth also introduced the testimony of Dr. Wagdy Wahba, Manager of the Toxicology Section of the Forensic Science Division. Dr. Wahba testified that the Environmental Chemistry Section is managed by Bob Huston. Suppression Transcript, May 2, 1990, at 7. Dr. Wahba testified that the employees of the Environmental Chemistry Section are not the same employees as work for the Toxicology Section. *Id.* He testified that there has never been an occasion where the equipment used by the Environmental Chemistry Section was used by the Toxicology Section. *Id.* at 8. Dr. Wahba also testified, however, that both he and Mr. Huston report to Dr. Winek and that both the Toxicology Section and Environmental Chemistry Sections are under Dr. Winek's "direct supervision." *Id.* Finally, he testified that Mr. Huston selects which samples are to be tested, and submits those samples to Wahba. *Id.* at 12.

The suppression court, in its opinion, stated:

This Court finds the distinctions between the Environmental Chemistry Section and the Toxicology Section of the Department of Laboratories insufficient from which it can be concluded that the certification testing laboratory is independent of the manufacturer. Here, the manufacturer and the laboratory are tentacles on the same octopus. While the Court has no question about the honesty, integrity and dedication of Dr. Winek and the operation of his Department, it would be improper to impose a lesser requirement of scrutiny upon a government agency than would be imposed upon someone making and testing simulator solution in his garage.

. . . .

There is no doubt that the purpose of requiring certification testing of simulator solution by a "laboratory independent of the manufacturer" is to provide quality control, a "double check", insurance that there is no collusion between a manufacturer and that manufactur-

er's laboratory. The regulations make no distinction between private or public manufacturers or private or public laboratories and does not exempt public entities manufacturing simulator solution from the requirement of an independent laboratory test.

... Having made no distinction between private and public entities however, the Court has little choice but to find that the procedures utilized by the Allegheny County Department of Laboratories are in violation of the Regulations of the Pennsylvania Department of Transportation, at 67 Pa.Code § 74.24(d).

Opinion, May 30, 1990, at 3–4 (footnote omitted).

The suppression court thus determined that the Commonwealth had not overcome its burden of demonstrating that the Toxicology Section and the Environmental Chemistry Section were independent within the meaning of § 77.24(d). Given the testimony of record, we cannot conclude that the suppression court erred in this conclusion. We are persuaded by that court's reasoning that the regulation would not permit the independent laboratory requirement to be satisfied by a finding that there was no collusion between the laboratories, nor actual error in the testing. By its terms, the regulation requires that the laboratories be not merely possessed of integrity and good intentions, but that they be actually independent. Accordingly, the tests challenged here were not conducted in accordance with the applicable regulation.

We next consider what remedy, if any, is appropriate. On this issue, the suppression court held that, while "evidence of bad faith, collusion or [the] absence of certification would clearly implicate the defendant's constitutional rights[,] ... the mere violation of a regulatory requirement does not amount to unconstitutional conduct." Opinion at 7. The suppression court thus concluded that, in the absence of an allegation of unconstitutional conduct, suppression was unavailable as a remedy. Instead, the court ruled that Thill would have the opportunity to challenge the test

results at trial on the basis of non-compliance with the regulation.

In *Commonwealth v. McGinnis,* 511 Pa. 520, 515 A.2d 847 (1986), our Supreme Court was faced with a challenge to the admissibility of evidence which had been collected in violation of § 1547. Although the model of breath testing device in question had been approved by the Legislature, this particular unit had been modified prior to the test. The Court held that the results of breath tests conducted on this modified machine were inadmissible, not because the machine was inherently unreliable, but because the machine no longer complied with § 1547. *McGinnis,* 511 Pa. at 525–26, 515 A.2d at 849–50.

In *Commonwealth v. Culp,* 378 Pa.Super. 213, 548 A.2d 578 (1988), this court affirmed an order which suppressed blood test results upon concluding that the Commonwealth had failed to carry its burden of showing compliance with 75 Pa.C.S. § 1547, the statute governing the admissibility of such evidence. *Id.,* 378 Pa.Superior Ct. at 221, 548 A.2d at 582.

In *Commonwealth v. Diulus,* 391 Pa.Super. 379, 571 A.2d 418 (1990), this court recognized that the statutory language of § 1547 made compliance with the regulatory language of § 77.24(d) mandatory for admissibility as well. In *Diulus,* we noted that the regulations require two tests of the suspect's breath, with the lower result to be admissible at trial. Where only one test was completed, this court held that the single result did not satisfy the regulations and was therefore inadmissible. Accordingly, we affirmed an order which suppressed the result of that single test.

Finally, in *Commonwealth v. Mabrey,* 406 Pa.Super. 437, 594 A.2d 700 (1991), this court affirmed an order suppressing the results of a breath test. The suppression court had found that the test of Mabrey had been conducted following the Commonwealth's failure to adjust the device, although the regulations required such adjustment. We stated:

To resolve this issue, we look to and reaffirm our position in *Diulus, supra,* and hold that the statutory requirements of 75 Pa.C.S. § 1547 and the regulations in

67 Pa.Code § 77.24 *both* establish the requisite procedures for a valid breath test.

*Id.,* 406 Pa.Superior Ct. at 444, 594 A.2d at 702 (emphasis original). Because the device had not been maintained in compliance with the applicable regulations, we held that the results of tests conducted with it were inadmissible at trial.

 Guided by *Culp, McGinnis* and *Mabrey,* we conclude that the failure of the Commonwealth to establish at the suppression hearing that the test of Thill's breath was conducted using simulator solution produced and tested in independent laboratories entitles Thill to suppression of the test results. Thill is entitled to a new trial at which the results of the breath test will be inadmissible.

Judgment of Sentence Reversed; Case Remanded; Jurisdiction Relinquished.

POPOVICH, J., files a dissenting statement in which OLSZEWSKI, J., joins.

POPOVICH, Judge, dissenting.

The record shows sufficient independence between the divisions of the Department of Laboratories. In the absence of a specific showing of an abuse of that independence, I would affirm.

OLSZEWSKI, J., joins.