613 A.2d 564

**COMMONWEALTH of Pennsylvania**

v.

**George M. TOWNSEND, Appellant.**

Superior Court of Pennsylvania.

Argued June 1, 1992.

Filed Aug. 6, 1992.

Petition for Allowance of Appeal Denied
Dec. 16, 1992.

Nicholas H. Krayer, III, Beaver, for appellant.

Ahmed Aziz, Asst. Dist. Atty., Aliquippa, for Comm., appellee.

Before ROWLEY, President Judge, and WIEAND, CIRILLO, OLSZEWSKI, MONTEMURO, POPOVICH, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

JOHNSON, Judge:

In this appeal from Judgment of Sentence, we are asked to review the trial court's determination that breathalyzer test results were properly admitted at trial. George M. Townsend contends that the procedures employed in operating the testing equipment were in violation of applicable regulations. We conclude that Townsend was entitled to suppression of the test results, finding that the trial court erred in its determination that the Commonwealth had carried its burden of demonstrating compliance with the regulations. Accordingly, we reverse and remand for a new trial.

On June 22, 1988, Townsend was charged by a Beaver Falls Police Officer with operating a vehicle while under the influence of alcohol to a degree which rendered him incapable of safe driving, 75 Pa.C.S. § 3731(a)(1), operating a vehicle while the amount of alcohol by weight in his blood was .10% or greater, 75 Pa.C.S. § 3731(a)(4), and driving the wrong direction on a one-way street, 75 Pa.C.S. § 3308(b). A jury trial was held on the two driving under the influence charges. The Commonwealth presented the testimony of the arresting offi-

cer and the testimony of the officer who administered a breathalyzer test to Townsend, as well as the testimony of Jerry Richey, an Intoxilyzer Technician for the Allegheny County Department of Laboratories. The jury returned a verdict of guilty on the charge of operating a vehicle while the amount of alcohol by weight was .10% or greater, 75 Pa.C.S. § 3731(a)(4).

On appeal, Townsend contests the admissibility of the results of the breath test for two separate reasons. First, he contends that the simulator solution used to verify the accuracy of the testing device was not produced in accordance with applicable regulations. Specifically, Townsend directs our attention to regulations which instruct that simulator solution is to be manufactured and tested for accuracy at "independent laboratories." *See*, 67 Pa.Code § 77.24(d), *infra*. He argues that, within the meaning of the regulation, the section of the Allegheny County Department of Laboratories which manufactures the solution is not independent of the section of the same department which tests the solution for accuracy. Second, Townsend argues that, even though the testing device in question was removed from service due to malfunctions, at trial, the Commonwealth failed to demonstrate regulatory compliance requiring such machines to be "serviced, repaired and adjusted, as necessary, . . . prior to being placed back into service." *See*, 67 Pa.Code § 77.24(c). For the reasons which follow, we conclude that the Commonwealth has failed to demonstrate compliance with the independent laboratory requirement of 67 Pa.Code § 77.24(d), and that Townsend was thus entitled to suppression of the test results.

The Vehicle Code, 75 Pa.C.S. § 101 *et seq*, provides, in pertinent part:

**§ 1547. Chemical testing to determine amount of alcohol or controlled substance**

. . . .

**(c) Test results admissible in evidence.**—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 or any other violation of this title arising out of the same action, the amount

of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

> *(1) Chemical tests of breath shall be performed on devices approved by the Department of Health using procedures prescribed jointly by regulations of the departments of Health and Transportation. Devices shall have been calibrated and tested for accuracy within a period of time and in a manner specified by regulations of the Departments of Health and Transportation. . . .*

75 Pa.C.S. § 1547(c) (emphasis added). The regulations which govern tests for blood alcohol contents, found at 67 Pa.Code § 77.21 *et seq.*, and adopted jointly by the Departments of Health and Transportation, state, in relevant part:

> **§ 77.24. Breath test procedures.**
>
> . . . .
>
> **(b) Procedures.** . . . Alcohol breath tests, accuracy inspection tests and calibrations conducted using breath test equipment shall be performed in accordance with accepted standard procedures for operation specified by the manufacturer of the equipment or comparable procedures. The procedures for alcohol breath testing shall include, at a minimum:
>
> . . . .
>
> (2) One simulator test using a simulator solution designed to give a reading of .10%, to be conducted immediately after the second actual alcohol breath test has been completed. . . . The tests results will be disregarded, and the breath test device will be removed from service . . . if one of the following occurs:
>
> . . . .
>
> (ii) If the simulator test yields a result less than .09% or greater than .10% when the breath test device is read to the second decimal place, or if the simulator test yields a result less than .090% or greater than .109% when the breath test device can be read to the third decimal place.
>
> . . . .

52

**(d) Simulator solution certification.** The manufacturer of simulator solution shall certify to the test user that its simulator solution is of the proper concentration to produce the intended results when used for accuracy inspection tests or for calibrating breath test devices. *This certification shall be based on gas chromatographic analysis by a laboratory independent of the manufacturer.*

67 Pa.Code § 77.24 (emphasis added).

Relying upon subsection (d), which requires that the laboratory which tests the simulator solution be "independent" of the manufacturer, Townsend argues that the two sections of the Allegheny County Department of Laboratories, which provided the simulator solution for calibration of the breath test equipment used to test him, are not independent within the meaning of this subsection.

In response, the Commonwealth argues initially that compliance with § 77.24(d) is not necessary so long as the Commonwealth follows *"accepted standard procedures for operation* specified by the manufacturer of the equipment or *comparable procedures."* Appellee's Brief at 3, citing § 77.24(b) (emphasis by Commonwealth). We disagree.

█ The Commonwealth's argument fails to recognize that § 77.24(b) goes on to state that "[t]he procedures for alcohol breath testing *shall include, at a minimum: . . . (2) One simulator test using simulator solution designed to give a reading of .10%,* to be conducted immediately after the second actual alcohol breath test has been completed." Thus, subsection (b) does not make breath tests admissible merely upon compliance with procedures "comparable to those specified by the manufacturer"; the tests must also include a test of simulator solution as directed by § 77.24(b)(2). Moreover, the language of subsection (b)(2) states that "[t]he test results will be disregarded, and the breath test device will be removed from service" if the test of the simulator solution does not yield a result sufficiently close to .10%. Therefore, we reject the Commonwealth's argument that following procedures that are "comparable to those specified by the manufacturer" alone

will guarantee the admissibility of test results regardless of violations of other relevant sections of the regulations.

The Commonwealth also argues that the Environmental Health Section of the Department of Laboratories is independent of the Toxicology Laboratory Section of the Department of Laboratories. At trial, in support of this position, the Commonwealth introduced the testimony of Jerry Richey, an Intoxilyzer technician employed by the Allegheny Department of Laboratories. His testimony was as follows:

Q. Who manufactures the simulator solution that you use to conduct these various tests?

A. In Dr. Winek's department of Laboratories he has different subdivisions. One of the subdivisions is Environmental Chemistry. The environmental chemist makes my solution and then it is given to a toxicologist who tests it.

Q. Who is it given to again? Who is it given to to test?

A. Toxicologist.

Q. Is that toxicologist associated with your office or Dr. Winek's office?

A. Yes.

. . . .

Q. Your testimony was previous that a toxicologist tests the simulator solution?

A. Correct.

Q. Who from Allegheny County Laboratories manufactures it?

A. An environmental chemist.

Q. Now, are these two entities, the toxicologist and chemist a separate facility within the operation of Allegheny County Laboratories?

A. Yes.

Q. To your knowledge, do the toxicologists there manufacture solutions?

A. The toxicologist?

Q. Yes.

A. No.

Q. Do the chemists test it?

A. No.

Notes of Testimony, October 16, 1989, at 42, 47.

On cross-examination, Richey testified as follows:

Q. Mr. Richey, you testified that an environmental chemist prepares the solution or tests it?

A. Prepares the solution.

. . . .

Q. I see. Are these organizations separate entities or are they separate departments or all within the Allegheny Department of Laboratories?

A. All within the Allegheny County Department of Laboratories.

Q. I see. Do they all report to the same ultimate supervisor?

A. Dr. Winek's the top notch, but the Department of Environmental Chemistry has a boss, also, so does the toxicologists have a lab manager, but they all go back to Dr. Winek.

Q. I see. There is a manager in each subsection and they all report to Dr. Winek?

A. Yes.

Q. What is his title?

A. Dr. Winek is the Director of the Department of Laboratories.

Q. And he is in charge of both the chemists and toxicologists?

A. Yes.

Q. Does Dr. Winek become involved in the operation of these offices from time to time?

A. I don't know that. I am not familiar with his duties there.

Q. What about the physical facilities? Are these offices both housed in the same building?

A. Yes.

Q. How big of a building is it?

A. It is a county office building. It is like a square block.

Q. So they're by no means the only offices within that building?

A. No.

Q. Do they all share the same area of space?

A. No. We are in the sub-basement of the County Office Building and there is different rooms in there and they are in two different areas. It is made in my office, which is manufactured there, and it is taken from my office to the instrument room where it is tested.

N.T. at 48–50. The trial court also inquired in this area:

THE COURT: Is the simulator solution, the manufacturer of that, that is done by one particular person?

THE WITNESS: Yes. It is usually done by the lab manager and if he is not there I have to go to another environmental chemist to make it.

THE COURT: That is manufactured then or prepared by an environmental chemist?

THE WITNESS: True.

THE COURT: Is the analysis or testing of that simulator solution, who is that done by?

THE WITNESS: The toxicologist.

THE COURT: And is he that person, independent of this person that manufactures the simulator solution?

THE WITNESS: True.

THE COURT: That is, neither one has control over the other?

THE WITNESS: True.

*THE COURT: And so the person that tests the simulator solution is not subject to any control by the person that manufactured it?*

*THE WITNESS: True.*

*THE COURT: And is completely independent?*

*THE WITNESS: True.*

N.T. at 51–52 (emphasis added).

█ In denying Townsend's post-trial motions, the trial court quoted and relied upon the portions of Richey's responses emphasized above. However, after careful consideration,

we cannot agree that those portions, or that all of the relevant portions of the transcript taken together, justify the conclusion that the Toxicology Section of the Allegheny County Department of Laboratories is independent of the Environmental Chemistry Section of the same department, within the meaning of 67 Pa.Code § 77.24(d). Instead, we conclude that the Commonwealth failed to overcome its burden of demonstrating compliance with the regulation.

It is clear from Richey's testimony that the simulator solution is made in one section of the Allegheny Department of Laboratories and tested in another. It is equally clear that, although these two departments are within the same building, they do not share office or laboratory space with each other. Each section has its own manager, and neither section controls the operations of the other section. However, Richey's testimony also reveals that each section is within the same county department, the Allegheny Department of Laboratories, and that each section manager reports directly to the same supervisor, Dr. Winek, who is "in charge of" both sections. Finally, we note that Richey testified that he was "not familiar" with Dr. Winek's duties when asked about Dr. Winek's involvement with the operation of the two sections. We are compelled to reject the trial court conclusion, based upon Richey's testimony, that the Toxicology Section of the Allegheny County Department of Laboratories is independent of the Environmental Chemistry Section of the Allegheny County Department of Laboratories within the meaning of 67 Pa.Code § 77.24(d). Richey's conclusory responses to the trial court's questions are not sufficient to warrant a different result.

Finally, the Commonwealth contends that a violation of the regulations does not warrant suppression of the test results. The Commonwealth observed that Townsend asserts only a technical violation of a regulation and that Townsend does not assert that the test was inaccurate or that he was denied a "fundamental right." The Commonwealth contends that the test result was admissible, and that Townsend's argument as to the simulator solution should only be directed to the weight to be given the evidence, not its admissibility,

relying upon *Commonwealth v. Shiffler*, 373 Pa.Super. 497, 541 A.2d 780 (1988).

In *Shiffler*, this Court reversed a conviction where the trial court had excluded evidence that the intoxilyzer device on which the defendant had been tested had previously malfunctioned. Our opinion in that case made clear, however, that the defendant's pre-trial motion to suppress was denied on the basis that it was untimely. At trial, and on appeal, Shiffler contended that the evidence of the device's malfunctions was nevertheless admissible to challenge the machine's reliability. We made no ruling regarding the suppressibility of test results in that case; instead, we held that the evidence which Shiffler offered was admissible to challenge the reliability of the breath testing device despite the denial of his motion to suppress and that the trial court had erred by excluding it. *Shiffler* cannot be relied upon for the proposition that suppression would not have been available had the issue been properly presented to the trial court.

In *Commonwealth v. Thill*, 417 Pa.Super. 485, 612 A.2d 1043 (1992), also decided today, we considered the suppressibility of test results involving simulator solution which had not been prepared in compliance with § 77.24(d). We held there that the defendant was entitled to suppression of those results. On the basis of that decision, we conclude that Townsend is entitled to suppression of the breath tests as well.

Our disposition of this issue makes it unnecessary to consider the second issue raised.

Judgment of Sentence Reversed; Case Remanded; Jurisdiction Relinquished.

POPOVICH, J. files a dissenting statement in which OLSZEWSKI, J. joins.

POPOVICH, Judge, dissenting:

I dissent herein for the same reason set forth in my dissenting statement in *Commonwealth v. Thill*, 417 Pa.Super. 485, 612 A.2d 1043 (1992).

OLSZEWSKI, J. joins.