J-A23022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRETT COLEMAN | : | |
| | : | |
| Appellant | : | No. 202 WDA 2025 |

Appeal from the Judgment of Sentence Entered July 17, 2023
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0001780-2022

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.: **FILED: December 22, 2025**

Brett Coleman appeals from the judgment of sentence entered for his conviction for driving under the influence of alcohol – high rate of alcohol ("DUI").[1] Coleman challenges the admission of evidence. We affirm.

Following a traffic stop in September 2021, police charged Coleman with DUI. Before trial, the Commonwealth notified the court that defense counsel noticed typographical errors in the calibration paperwork for the breath testing device used to ascertain Coleman's blood alcohol content ("BAC"). *See* N.T., Non-Jury Trial ("Day 1"), 5/18/23, at 2-3. Defense counsel argued that based on the errors in the paperwork, the Commonwealth could not "prove that that testing device was accurate based on the face of this certificate." *Id.* at 7.

---

[1] 75 Pa.C.S.A. § 3802(b).

At a non-jury trial, the Commonwealth presented testimony from the arresting officer, Trooper Shauntai Hall; the officer who administered the breath test, Officer Michael Veselicky; and the officer who performed the accuracy and calibration tests on the breath testing device, Patrolman Steven Hoculock. *See* N.T., Day 1; N.T., Non-Jury Trial ("Day 2"), 6/23/23.[2]

On the first day of trial, Coleman objected that the testimony of the officer who administered the breath test was inadmissible without the testimony of the officer who performed the accuracy and calibration tests, Patrolman Hoculock. *See* N.T., Day 1, at 25-26. Because Patrolman Hoculock was not available, the court continued the trial.

At the continued trial, counsel again objected to the testimony of the officer who administered the breath test. N.T., Day 2, at 2-3 (counsel objecting "to that number actually coming in," referencing BAC obtained from breath test). The court responded that "if his testimony lacks a proper foundation, I'll disregard the testimony on which the faulty foundation is based." *Id.* at 3.

Officer Veselicky testified that he administered the breath test to Coleman and found a BAC of .155%. *Id.* at 4, 8. Patrolman Hoculock testified that he completed "the maintenance which is the yearly calibration and monthly accuracies" for the machine. *Id.* at 12. He explained that accuracy tests are conducted monthly on the device, while calibration tests are done

---

[2] The court held two hearings due to Patrolman Hoculock's unavailability at the May hearing.

yearly. *Id.* at 20. The Commonwealth moved into evidence, without objection, three documents related to the accuracy of the breath testing device, marked as Commonwealth Exhibit 3. It also put into evidence a six-page group of documents related to the calibration testing, marked as Commonwealth Exhibit 4. *Id.* at 14. The calibration documents included printouts from the testing conducted by Officer Hoculock, a certificate of calibration, and a document labeled, "Calibration Test." *See* Commonwealth Exhibit 4.

Patrolman Hoculock testified that he performed the accuracy test on the device on August 19, 2021, and the machine complied with the accuracy test. N.T., Day 2, at 17-18. Regarding the calibration testing, Patrolman Hoculock testified that it is completed yearly, in this case on November 12, 2020. *Id.* at 19, 21. He explained they use commercially prepared testing solutions in various concentrations to conduct the calibration tests. *Id.* at 20. These solutions include .05%, .10%, and .20% solutions. *Id.* at 20-21. Patrolman Hoculock explained that the vender used to supply a .15% solution until 2019, when it began supplying a .20% solution instead. *Id.* For each solution, Patrolman Hoculock conducted five tests, printed the results, and gave the results to a secretary to complete the calibration test paperwork. *Id.* at 21. The document labeled "Calibration Test" listed the absolute differences for each of the tests Patrolman Hoculock conducted on the device and listed solution amounts of .05%, .10%, and .150%. *See* Commonwealth Exhibit 4.

Patrolman Hoculock testified that the calibration test paperwork, which is separate from the printouts, incorrectly listed the sample solution used to

conduct one set of tests as .15% instead of .20%. N.T., Day 2, at 23. He explained that since the percentages on the document were based on a .15% solution rather than a .20% solution, the absolute differences listed for that section on the Calibration Test were incorrect, resulting in an incorrectly noted average deviation of .498%. *Id.* at 25, 33. He also explained that he did not input the calculations on the calibration test paperwork. Instead, a secretary calculated the absolute differences and then entered the numbers on the form. *Id.* at 23, 32, 39.

Patrolman Hoculock also testified about a second error on the paperwork for the testing results related to the .10% solution. The calibration test paperwork listed the testing results as .103%, .104%, .104%, .103%, and .103%, while Patrolman Hoculock's printout of the test listed the results as .99%, .103%, .104%, .104%, and .103%. *Id.* at 37-38. After the secretary completed the calibration test paperwork, Patrolman Hoculock signed the certificate of breath testing device calibration without reviewing the calibration test paperwork. *Id.* at 33.

On cross-examination, Patrolman Hoculock agreed that he only learned of the discrepancy on the paperwork when defense counsel alerted the Commonwealth of the errors. *Id.* at 34. Patrolman Hoculock agreed that the device would have been out of service if the calibration had been based on the listed absolute differences. *Id.* at 32-33.

During argument, defense counsel argued that the court should not consider Coleman's BAC because the certificate of calibration was not accurate

based on the errors on the calibration test paperwork. *Id.* at 45. The court ultimately found Coleman guilty, finding Patrolman Hoculock credible and that he adequately explained the discrepancies on the calibration test paperwork. *See id.* at 48-49.

The court found Coleman guilty of DUI and imposed a sentence of 48 hours to six months' incarceration. Coleman appealed and we dismissed the appeal for failure to file a docketing statement. Following the filing of a Post Conviction Relief Act petition by Coleman, the trial court reinstated Coleman's appellate rights *nunc pro tunc*, and this timely appeal followed.

Coleman raises the following question:

> Whether the trial court erred by allowing the Commonwealth to enter into evidence [Coleman's] [BAC] when the certificate of calibration for the breath testing device as required by 67 Pa. Code § 77.26, contained multiple errors[?]

Coleman's Br. at 5 (suggested answer omitted).

Coleman claims the trial court erred by admitting his BAC "when the Certificate of Calibration for the Breath Testing Device as required by 67 Pa. Code § 77.26, contained multiple errors." *Id.* at 13.

We review a challenge to the admissibility of evidence for an abuse of discretion. *See Commonwealth v. Poplawski*, 130 A.3d 697, 716 (Pa. 2015). Section 1547(c) of the Motor Vehicle Code provides that when a defendant is charged with DUI, "the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath or blood, which tests were conducted by qualified persons using approved

- 5 -

equipment shall be admissible in evidence." 75 Pa.C.S.A. § 1547(c). "Devices shall have been calibrated and tested for accuracy within a period of time and in a manner specified by regulations of the Departments of Health and Transportation." *Id.* at § 1547(c)(1). "[T]he certificate of calibration, when offered into evidence with a certificate of accuracy, shall be presumptive evidence only of the completion of the proper testing for accuracy of the breath test equipment." ***Commonwealth v. Sloan***, 607 A.2d 285, 293 (Pa.Super. 1992); ***see*** 75 Pa.C.S.A. § 1547(c)(1) (stating that a certificate or log showing that the device "was calibrated and tested for accuracy and that the device was accurate shall be presumptive evidence of those facts in every proceeding in which a violation of this title is charged").

Section 77.26(b) of Department of Transportation regulations governs the procedures for calibration testing of Type A breath test equipment:

(b) *Procedures for calibration testing.*

(1) Calibration testing a breath test device shall consist of conducting three separate series of five simulator tests. One of the series of tests shall use simulator solution designed to give a reading of .10%. One of the series of tests shall use simulator solution designed to give a reading of .05%. The last series of tests shall use simulator solution designed to give a reading above .10% which is a multiple of .05%.

(2) The results of the three separate series of tests shall be recorded on an appropriate test record.

(3) Test results shall be recorded to the third decimal place if the third decimal place is available.

67 Pa. Code § 77.26(b)(1-3). When the calibration test "yields a reading which is more than .010 below" the solution given or "more than .009 above" the solution given, the device does not pass calibration and should be taken out of service. *Id.* at § 77.26(b)(4)(ii)(B).

Here, Coleman maintains that the court erred in admitting his BAC into evidence because the calibration test paperwork was inaccurate. He asserts that the certificate of calibration "is a foundational piece of evidence" to admit the breathalyzer results that determined his BAC. Coleman's Br. at 13. Coleman argues that Section 77.26 sets out the requirements for calibrating a breath testing device and that the admissibility of BAC results "depends upon strict compliance" with Section 1547(c) of the Motor Vehicle Code. *Id.* at 14, 16 (citing *Commonwealth v. Mabrey*, 594 A.2d 700 (Pa.Super. 1991)). He points out that the certificate in the instant case had numerous errors, including that "the second series of test results on the certificate do not match the machine printout results[.]" *Id.* at 15, 16-17. Based on the errors in the calibration test paperwork, he claims that the evidence shows the device was not calibrated properly, and as such, the BAC results from the device should not have been considered by the court.

Coleman's reliance on *Mabrey* is misplaced. There, the trial court suppressed Mabrey's breath test results upon evidence that the machine used had malfunctioned on several occasions before Mabrey's test. Evidence showed that the device "failed to render consecutive results on the same subject differing by no more than 0.020%." *Mabrey*, 594 A.2d at 701. The

Commonwealth presented testimony from officers who explained that the varying results were caused by "how forcefully the subject exhaled into the device." *Id.* In his defense, Mabrey presented testimony from a doctor who stated that the force of the "breath sample should not cause the results to differ by as much as .020%." *Id.* The trial court suppressed the BAC results, finding that the explanation by officers for the varying differences "might have been credible in one or two instances, [but] the fact that so many deviations occurred," established that the device should have been removed from service, checked, and calibrated. *Id.* at 701-02.

The Commonwealth appealed, arguing that evidence of the device's malfunction went to weight, not admissibility. We affirmed, concluding that Section 1547 and Section 77.24 "both establish the requisite procedures for a valid breath test." *Id.* at 703. We held that "when the statute or regulations require that a machine be taken out of service, subsequent test results will be inadmissible if rendered before 'service, repair and adjustment, as necessary,' occurs." *Id.* (quoting 67 Pa. Code 77.24(c)).

Coleman aptly points out that Section 77.26 provides the requirements for when a machine should be taken out of service due to a failed calibration. However, unlike *Mabrey*, the court here found credible Patrolman Hoculock's testimony that the machine had performed properly during testing but the secretary had entered incorrect numbers. Furthermore, in *Mabrey* the errors were the result of problems with the machine itself. Here, the discrepancies were due to human typographical error.

We discern no abuse of discretion. Although the calibration test paperwork contained errors that would suggest the device did not pass calibration under Section 77.26, the court found Patrolman Hoculock credible and determined that he "adequately explained the discrepancies with regard to the yearly calibration test." *See* Explanation of Decision, filed 12/13/23, at 5, 8; *see* 67 Pa. Code § 77.26(b)(4)(ii)(B). Additionally, the court conducted its own calculations based on Patrolman Hoculock's printouts from the testing and found that "none of the values was more than .09% above the reading that the solution was designed to give," in line with the requirements of Section 77.26. Explanation of Decision at 7-8. Thus, Coleman's breath test results were from a properly calibrated device, and his BAC was admissible. No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  12/22/2025